**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

ARKEMA INC.,
a Pennsylvania corporation

    Plaintiff,

v.                                                          CASE NO. _____

BULK RESOURCES, INC.,
a Nevada corporation

    Defendant.
_____/

## COMPLAINT

Plaintiff Arkema Inc. ("Arkema") files this complaint against defendant Bulk Resources, Inc. ("Bulk"), and alleges as follows:

### NATURE OF THE ACTION

1. Arkema sues Bulk for breach of a Transloading Agreement, which includes an unsatisfied duty on the part of Bulk to defend Arkema, hold it harmless, and insure it against all third-party claims brought or asserted against it in two Louisiana lawsuits.

### THE PARTIES

2. Arkema is a Pennsylvania corporation with its principal place of business in King of Prussia, Pennsylvania.

3. Bulk is a Nevada corporation registered in Florida as a foreign profit corporation with its principal place of business in Plant City, Florida.

**JURISDICTION AND VENUE**

4. Jurisdiction is proper in this Court under 28 U.S.C. § 1332. The case in controversy exceeds $75,000, exclusive of interest and costs, and there is complete diversity between the parties.

5. Venue is proper in this Court under 28 U.S.C. § 1391. Defendant Bulk is headquartered and has offices at 3108 Central Drive, Plant City, Florida. The Transloading Agreement identifies Plant City, Florida as the location of Bulk's offices, and the location to which all notices to Bulk must be provided.

**GENERAL ALLEGATIONS**

*A.  The Transloading Agreement.*

6. On May 1, 2010, Arkema and Bulk entered into a Transloading Agreement. A true, accurate, and complete copy of the Transloading Agreement is attached as **Exhibit A**.

7. Under the Transloading Agreement, Bulk undertook the duty to perform certain services for Arkema, which included the transfer of certain materials, including liquid latex, from railcars into tank trucks and tank trucks into railcars for delivery to Arkema's customers, and other "related services," including the cleaning of such railcars after they have been returned from delivery. The services to be performed by Bulk are listed on Schedule 1 to the Transloading Agreement (the "Services").

8. The Services were to be performed at Bulk's facility at 7500 Terminal Road, New Orleans, Louisiana.

9. Bulk undertook various duties and made certain representations to Arkema under the Transloading Agreement, which included among other things:

(a) Defending Arkema "from and against all suits, actions, claims, losses, expenses, damages or costs, including reasonable attorney's fees and costs, or liability of whatever character incurred by or which may be brought or asserted against Arkema . . . for any injury (including death) . . . arising out of Transloader . . . or subcontractor's performance or failure to perform" the Transloading Agreement. (Agreement § 9.2)

(b) Holding Arkema harmless "from and against all suits, actions, claims, losses, expenses, damages or costs, including reasonable attorney's fees and costs, or liability of whatever character incurred by or which may be brought or asserted against Arkema . . . for any injury (including death) . . . arising out of Transloader . . . or subcontractor's performance or failure to perform" the Transloading Agreement. (Agreement § 9.2)

(c) Procuring and maintaining insurance with limits and coverage specified in Schedule 5 of the Transloading Agreement, endorsed in the name of Arkema, which shall be "primary insurance and not duplicate, concurrent or excess with respect to insurance carried by Arkema, and shall include a waiver of subrogation against Arkema." (Agreement § 10.1 and Schedule 5)

(d) Performing "all Services" under the Transloading Agreement "in a safe, professional and workmanlike manner." (Agreement § 4.2)

(e) Representing to Arkema "that it ha[d] all necessary knowledge, skill and expertise to handle" materials to be transloaded under the Transloading Agreement. (Agreement § 4.3)

(f) "[T]ak[ing] every reasonable precaution to minimize any hazard while performing Services for" Arkema under the Transloading Agreement. (Agreement § 4.3)

(g) "[N]otify[ing] its employees of all hazards associated with materials handled [under the Transloading Agreement] and protect its employees from any hazards." (Agreement § 4.3)

(h) "[P]rovid[ing] to all employees and contractors working in or around the Facility sufficient training for the employees and contractors to carry out their duties in a safe and responsible manner" under the Transloading Agreement. (Agreement § 4.3)

3

    (i)     "[R]ender[ing] all services [under the Transloading Agreement] in compliance with . . . the Occupational Safety and Health Act (OSHA)" (Agreement § 4.4)

    (j)     "[A]cknowledg[ing] that it is solely responsible for and in control of operations at its Facility as well as the railcars . . . utilized for the transport of the [m]aterials" under the Transloading Agreement. (Agreement § 4.6)

**B.**    ***OSHA Citation and Notification of Penalty for violations committed by Dedicated TCS, a Bulk affiliate, for injuries caused to Messrs. Hernandez, Duckworth, and leading to the fatality of Mr. Stack in connection with the performance of the Services.***

10.    On information and belief, Bulk performed the Services and other obligations under the Transloading Agreement through an affiliated company, Dedicated TCS, LLC ("Dedicated").

11.    On April 5, 2016, the U.S. Department of Labor, Occupational Safety and Health Administration ("OSHA") issued a Citation and Notification of Penalty ("Citation") to Dedicated following the injuries of two Dedicated employees, Joendel Hernandez and Anthony Duckworth, and the death of a third, Armond Stack, on October 8, 2015. A true, accurate, and complete copy of the Citation is attached as **Exhibit B**.

12.    As stated in the Citation, OSHA cited Dedicated for the following violations:

    (a)    Dedicated failed to ensure employees were provided respiratory protection equipment necessary to protect the health of each employee.

    (b)    Dedicated failed to ensure that employees received a medical evaluation prior to implementing respiratory protection for employees.

    (c)    Dedicated failed to ensure that employees had received a quantitative or qualitative fit test.

    (d)    Dedicated did not implement a written program that: (a) established and implemented the means, procedures, and practices to eliminate or control hazards necessary for safe permit space entry operations; (b) identified employee job duties; (c) implemented appropriate

procedures for summoning rescue and emergency services, and preventing unauthorized personnel from attempting rescue; or (d) implemented a system for the preparation, issue, use and cancellation of entry permits.

(e) Dedicated allowed employees to enter a railcar that had not been evaluated to determine if the space contained a safe atmosphere.

(f) Dedicated failed to ensure that the prospective rescue service was able to respond to the facility in a timely manner.

(g) Dedicated failed to ensure that the prospective rescue service had been evaluated to determine their ability to provide rescue from permit spaces maintained onsite (i.e., tanker trucks, trailers, and railcars).

(h) Dedicated failed to prepare an entry permit prior to an employee entering a railcar.

(i) Dedicated failed to ensure that an entry supervisor verified the entry permit for a railcar before entry was allowed.

(j) Dedicated allowed employees to enter a permit space within a railcar without ensuring that they were attached to a retrieval device or fixed point outside the railcar.

C. *Actions filed against Dedicated, Bulk, and Arkema arising from the October 8, 2015 incident in connection with the performance of Services under the Transloading Agreement.*

13. On April 22, 2016, Arkema was sued together with Dedicated by Joendel Hernandez and Anthony Duckworth in the U.S. District Court for the Eastern District of Louisiana (the "Hernandez/Duckworth Complaint"). A true, accurate, and complete copy of the Hernandez/Duckworth Complaint is attached as **Exhibit C**.

14. On October 6, 2016, Arkema was sued by the estate of Armond Stack in the Civil District Court for the Parish of Orleans together with Dedicated, a Bulk affiliate, and unnamed insurance companies (the "Stack Complaint"). A true, accurate, and complete copy of the Stack Complaint is attached as **Exhibit D**.

15. The Hernandez/Duckworth Complaint alleges, among other things, that Messrs. Hernandez and Duckworth "were employees of [Dedicated] and assigned to clean a tank car at [Dedicated's] facility located at 7500 Terminal Road in Port of New Orleans" on October 8, 2015.

16. The Hernandez/Duckworth Complaint further alleges, among other things, that Messrs. Hernandez and Duckworth,

> would have to work in a confined space without ventilation. [Dedicated] did not test the air quality prior to ordering [them] to enter the tank car and failed to provide [them] with breathing apparatus to ensure their ability to breath upon entering the confined space of the tank car.

17. The Hernandez/Duckworth Complaint further alleges, among other things, that Messrs. Hernandez and Duckworth lost consciousness "as a direct result of the exposure to hazardous vapors in the tank and the lack of oxygen."

18. The Hernandez/Duckworth Complaint further alleges, among other things, that OSHA "concluded that the . . . incident was, in fact, caused by the intentional acts of [Dedicated]."

19. The Hernandez/Duckworth Complaint further alleges, among other things, that Messrs. Hernandez and Duckworth were personally injured as a result of the incident.

20. The Hernandez/Duckworth Complaint further alleges, however, that "in the alternative, and only in the event that it is determined that the intentional conduct of [Dedicated] was not the sole cause of the incident, then it is alleged that the incident was caused by the negligence of" Arkema.

21. The Stack Complaint alleges, among other things, that Mr. Stack "was an employee of Dedicated and assigned to clean a tank car at Dedicated and/or Bulk Resources's facility located at 7501 Terminal Road in Port of New Orleans" on October 8, 2015.

22. The Stack Complaint further alleges, among other things, that "Dedicated was aware that the tank car to be cleaned contained hazardous and/or toxic chemical vapors and that [Mr.] Stack was required to work in a confined space without ventilation."

23. The Stack Complaint further alleges, among other things, that "Dedicated did not test the air quality prior to ordering [Mr.] Stack to enter the tank car and failed to provide him with breathing apparatus to ensure his ability to breathe upon entering the confined space of the tank car."

24. The Stack Complaint further alleges, among other things, that "[Mr.] Stack lost consciousness immediately after entering the tank car as a direct result of the exposure to hazardous vapors in the tank and the lack of oxygen."

25. The Stack Complaint further alleges, among other things, that "[o]n October 8, 2015 at 11:06 a.m. [Mr.] Stack was pronounced dead and his cause of death [was] identified as asphyxia due to an oxygen deficient environment."

26. The Stack Complaint further alleges, among other things, that OSHA "conducted an exhaustive investigation of the incident and concluded that the . . . incident was, in fact, caused by the intentional acts of Dedicated."

27. The Stack Complaint further alleges, among other things, that the "incident was cause solely through the intentional acts of [d]efendants, Dedicated and/or Bulk Resources, and the negligence of Bulk Resources . . . ."

28. The Stack Complaint further alleges, however, that "[i]n the event, and only in the event that it is determined that the intentional conduct of Dedicated and/or Bulk Resources and the negligent conduct of Bulk Resources were not the sole cause of the incident, then it is alleged that the incident was caused by the negligence of [d]efendant, Arkema . . . ."

29. The Hernandez/Duckworth and Stack Complaints were filed against Arkema despite, among other things, the facts that:

   (a)   OSHA determined that Dedicated violated numerous safety regulations putting Messrs. Hernandez, Duckworth, and Stack at risk.

   (b)   The Hernandez/Duckworth Complaint alleges that (i) Dedicated knowingly put Messrs. Hernandez and Duckworth at risk of harm and (ii) OSHA concluded the October 8, 2015 incident was caused by the intentional acts of Dedicated.

   (c)   The Stack Complaint alleges that the October 8, 2015 incident "was caused solely through the intentional acts of" Dedicated and/or Bulk.

   (d)   Mr. Stack's autopsy protocol and certification of death state that the cause of Mr. Stack's death was "asphyxia due to oxygen deficient environment."

   (e)   A New Orleans Fire Department report stated that the inside of the tank car was an oxygen deprived atmosphere with $O_2$ levels measured at 11.5%, 13.5%, and 15.6% at the floor of the car, midway of the car, and at the top of the car inside the manway, respectively.

   (f)   The Safety Data Sheet for the polymer latex that had allegedly been transloaded, and after which the tank car was being cleaned by Messrs. Hernandez, Duckworth, and Stack, "is not anticipated to produce significant adverse human health effects."

  (g) The Safety Data Sheet for the polymer latex that had allegedly been transloaded, and after which the tank car was being cleaned by Messrs. Hernandez, Duckworth, and Stack, further provides exposure control and personal protection warnings stating, among other things: "Investigate engineering techniques to reduce exposures below airborne exposure limits or to otherwise reduce exposure. Provide ventilation if necessary to minimize exposures or to control exposure levels to below airborne exposure limits . . . ."

A true, accurate, and complete copy of the ENCOR® 169 S Safety Data Sheet is attached as **Exhibit E**.

 **D.** ***Arkema's communications to Bulk demanding its performance under the Transloading Agreement and Arkema's notification to Bulk of its breaches.***

  30. On May 6, 2016, counsel for Arkema wrote Bulk and Dedicated demanding, in accordance with Transloading Agreement § 9.2, that Bulk and/or Dedicated indemnify and hold Arkema harmless from all claims associated with the October 8, 2015 incident. A true, accurate, and complete copy of the May 6, 2016 demand is attached as **Exhibit F**.

  31. On May 10, 2016, Arkema's risk manager wrote Bulk and Dedicated demanding, among other things, that they tender a notice of claim to their respective liability insurers for the defense and indemnification of Arkema in connection with all claims resulting from the October 8, 2015 incident. A true, accurate, and complete copy of the May 10, 2016 demand is attached as **Exhibit G**.

  32. Arkema's May 10, 2016 letter also demanded that Arkema be copied on any notices of claims to Bulk's and/or Dedicated's insurers.

  33. By email on November 17, 2016, counsel for Bulk refused to acknowledge the validity of Arkema's written demands defend Arkema and hold it harmless. A true, accurate, and complete copy of the November 17, 2016 refusal is attached as **Exhibit H**.

34. On December 5, 2016, counsel for Arkema wrote counsel for Bulk and Dedicated advising them that Bulk breached the Transloading Agreement by, among other things, (a) failing to defend Arkema from the Hernandez/Duckworth and Stack Complaints as required by Transloading Agreement § 9.2, (b) failing to procure insurance protecting Arkema as required by Transloading Agreement § 10, and (c) failing to obtain Arkema's written permission for Bulk to assign and delegate its duties to Dedicated as required by Transloading Agreement § 11.6. A true, accurate, and complete copy of the December 5, 2016 demand is attached as **Exhibit I**.

35. Arkema's December 5, 2016 letter to Bulk also demanded that Bulk reimburse Arkema for all attorneys' fees and costs incurred in connection with the claims arising out of the October 8, 2015 incident.

36. By email on December 7, 2016, counsel for Bulk and Dedicated again refused to acknowledge the validity of Arkema's written demands regarding Bulk's breaches of the Transloading Agreement, and refused to honor Bulk's duty to defend Arkema or hold Arkema harmless from the Hernandez/Duckworth and Stack Complaints. A true, accurate, and complete copy of Bulk's December 7, 2016 email is attached as **Exhibit J**.

37. Additionally, Bulk has either failed to procure the necessary insurance or has not treated Arkema as a named insured under Bulk's insurance policy.

38. Both the Hernandez/Duckworth and Stack Complaints remain active against Arkema requiring it to expend corporate resources, defend itself, and incur attorneys' fees and costs.

39.     On December 15, 2016, the District Court for the Eastern District of Louisiana entered a Case Management and Scheduling Order setting expedited deadlines in the Hernandez/Duckworth action, including a trial setting for the week beginning September 25, 2017.  Accordingly, it is essential for Bulk to satisfy promptly its duties to Arkema under the Transloading Agreement.  A true, accurate, and complete copy of the Case Management and Scheduling Order email is attached as **Exhibit K**.

## COUNT I
### (Specific Performance to Defend and Damages)

40.     Arkema realleges and incorporates by reference the allegations contained in Paragraph numbers 1 through 36 above as if fully set forth here.

41.     On May 1, 2010, Arkema and Bulk entered into the Transloading Agreement attached as **Exhibit A**.

42.     Arkema has substantially satisfied all of its material obligations under the Transloading Agreement and has not waived or abandoned its rights.

43.     Claims were made against Arkema in both the Hernandez/Duckworth and Stack Complaints attached as **Exhibits C** and **D**.

44.     Transloading Agreement § 9.2 requires Bulk to defend Arkema "from and against all suits, actions, claims, losses, expenses, damages or costs, including reasonable attorney's fees and costs, or liability of whatever character incurred by or which may be brought or asserted against Arkema . . . for any injury (including death) . . . arising out of Transloader . . . or subcontractor's performance or failure to perform" the Transloading Agreement.

11

45. Arkema has demanded that Bulk defend Arkema against the Hernandez/Duckworth and Stack Complaints as required by Transloading Agreement § 9.2 and as noted in the demands dated May 6, May 10, and December 5, 2016 attached as **Exhibits F**, **G**, and **H**, respectively.

46. Bulk has not defended Arkema against the Hernandez/Duckworth and Stack Complaints as required by Transloading Agreement § 9.2, and is in breach of its duty to Arkema.

47. The claims made against Arkema in both the Hernandez/Duckworth and Stack Complaints have required Arkema to defend itself against them and to incur attorneys' fees and costs doing so.

**WHEREFORE,** Arkema demands judgment against Bulk to:

(a) satisfy its duty to defend Arkema from and against all suits, actions, claims, losses, expenses, damages or costs, including reasonable attorney's fees and costs, or liability of whatever character brought or asserted against Arkema in connection with the Transloading Agreement;

(b) award Arkema all money damages, attorneys' fees and costs, and interest incurred in connection with its defense of the Hernandez/Duckworth and Stack Complaints;

(c) award Arkema all money damages, attorneys' fees and costs, and interest incurred to compel Bulk to honor its obligations to Arkema under the Transloading Agreement; and

(d) grant Arkema all other relief as the Court deems just and proper.

## COUNT II
### (Specific Performance to Hold Arkema Harmless and Damages)

48.  Arkema realleges and incorporates by reference the allegations contained in Paragraph numbers 1 through 36 above as if fully set forth here.

49.  On May 1, 2010, Arkema and Bulk entered into the Transloading Agreement attached as **Exhibit A**.

50.  Arkema has substantially satisfied all of its material obligations under the Transloading Agreement and has not waived or abandoned its rights.

51.  Claims were made against Arkema in both the Hernandez/Duckworth and Stack Complaints attached as **Exhibits C** and **D**.

52.  Transloading Agreement § 9.2 requires Bulk to hold Arkema harmless "from and against all suits, actions, claims, losses, expenses, damages or costs, including reasonable attorney's fees and costs, or liability of whatever character incurred by or which may be brought or asserted against Arkema . . . for any injury (including death) . . . arising out of Transloader . . . or subcontractor's performance or failure to perform" the Transloading Agreement.

53.  Arkema has demanded that Bulk hold Arkema harmless against the Hernandez/Duckworth and Stack Complaints as required by Transloading Agreement § 9.2 and as noted in the demands dated May 6, May 10, and December 5, 2016 attached as **Exhibits F**, **G**, and **H**, respectively.

54.  Bulk has not held Arkema harmless against the Hernandez/Duckworth and Stack Complaints as required by Transloading Agreement § 9.2, and is in breach of its duty to Arkema.

55. The claims made against Arkema in both the Hernandez/Duckworth and Stack Complaints have required Arkema to expend corporate resources in connection with the Hernandez/Duckworth and Stack Complaints and incur attorneys' fees and costs.

**WHEREFORE,** Arkema demands judgment against Bulk to:

(a) satisfy its duty to hold Arkema harmless from and against all suits, actions, claims, losses, expenses, damages or costs, including reasonable attorney's fees and costs, or liability of whatever character brought or asserted against Arkema in connection with the Transloading Agreement;

(b) award Arkema all money damages for expenses and costs incurred in connection with the defense of the Hernandez/Duckworth and Stack Complaints, including attorneys' fees and costs and interest;

(c) award Arkema all money damages, attorneys' fees and costs, and interest incurred to compel Bulk to honor its obligations to Arkema under the Transloading Agreement; and

(d) grant Arkema all other relief as the Court deems just and proper.

## COUNT III
### (Specific Performance to Insure Arkema and Damages)

56. Arkema realleges and incorporates by reference the allegations contained in Paragraph numbers 1 through 36 above as if fully set forth here.

57. On May 1, 2010, Arkema and Bulk entered into the Transloading Agreement attached as **Exhibit A**.

58. Arkema has substantially satisfied all of its material obligations under the Transloading Agreement and has not waived or abandoned its rights.

59. Claims were made against Arkema in both the Hernandez/Duckworth and Stack Complaints attached as **Exhibits C** and **D**.

60. Transloading Agreement § 10.1 and Schedule 5 obligates Bulk to procure and maintain insurance commercial general liability insurance coverage with minimum limits of $2 million, endorsed in the name of Arkema, which shall be "primary insurance and not duplicate, concurrent or excess with respect to insurance carried by Arkema, and shall include a waiver of subrogation against Arkema."

61. Arkema has demanded that Bulk defend Arkema against the Hernandez/Duckworth and Stack Complaints, and that Bulk tender a notice of claim to their respective liability insurers for the defense and indemnification of Arkema in connection with all claims resulting from the October 8, 2015 incident, as required by Transloading Agreement § 9.2 and as noted in the demands dated May 6, May 10, and December 5, 2016 attached as **Exhibits F**, **G**, and **H**, respectively.

62. Bulk has not treated Arkema as a named insured under Bulk's General Liability insurance policy, as required by Transloading Agreement § 10.1 and Schedule 5, and is in breach of its duties to Arkema.

63. The claims made against Arkema in both the Hernandez/Duckworth and Stack Complaints have required Arkema to defend itself against them, expend corporate resources in connection with the Hernandez/Duckworth and Stack Complaints, and incur attorneys' fees and costs.

**WHEREFORE,** Arkema demands judgment against Bulk to:

(a) satisfy its duty to insure and Arkema as required by Transloading Agreement § 10.1 and Schedule 5, provide Arkema a certificate of insurance for all coverages under the Transloading Agreement, and tender a notice of claim to the general commercial liability insurer for the defense and indemnification of Arkema in connection with all claims resulting from the October 8, 2015 incident;

(b) award Arkema all money damages for attorneys' fees and costs and interest incurred in connection with its defense of the Hernandez/Duckworth and Stack Complaints;

(c) award Arkema all money damages, attorneys' fees and costs, and interest incurred to compel Bulk to honor its obligations to Arkema under the Transloading Agreement; and

(d) grant Arkema all other relief as the Court deems just and proper.

## COUNT IV
### Breach of Transloading Agreement § 4.2

64. Arkema realleges and incorporates by reference the allegations contained in Paragraph numbers 1 through 36 above as if fully set forth here.

65. On May 1, 2010, Arkema and Bulk entered into the Transloading Agreement attached as **Exhibit A**.

66. Arkema has substantially satisfied all of its material obligations under the Transloading Agreement and has not waived or abandoned its rights.

67. Transloading Agreement § 4.2 required Bulk to perform its Services under the Transloading Agreement "in a safe, professional and workmanlike manner."

68. Bulk breached its duty to Arkema by delegating the performance of Services to Dedicated, which performed the services under the Transloading Agreement in an unsafe, unprofessional, and unworkmanlike manner for the reasons described in the OSHA Citation.

69. Arkema was damaged by this breach.

**WHEREFORE,** Arkema demands judgment against Bulk to:

(a)  award Arkema damages to be proven at trial;

(b)  award Arkema its attorneys' fees and costs and interest; and

(c)  grant Arkema all other relief as the Court deems just and proper.

## COUNT V
### Breach of Transloading Agreement § 4.3

70. Arkema realleges and incorporates by reference the allegations contained in Paragraph numbers 1 through 36 above as if fully set forth here.

71. On May 1, 2010, Arkema and Bulk entered into the Transloading Agreement attached as **Exhibit A**.

72. Arkema has substantially satisfied all of its material obligations under the Transloading Agreement and has not waived or abandoned its rights.

73. Transloading Agreement § 4.3 required Bulk to,

    (a)  "take every reasonable precaution to minimize any hazard while performing Services" under the Transloading Agreement;

    (b)  "notify its employees of all hazards associated with materials handled [under the Agreement] and protect its employees from any hazards"; and

    (c)  "provide to all employees and contractors working in or around the Facility sufficient training for the employees and contractors to carry out their duties in a safe and responsible manner . . . ."

74. Bulk also represented to Arkema "that it ha[d] all necessary knowledge, skill and expertise to handle" materials to be transloaded.

75. For the reasons described in the OSHA Citation, Bulk breached its duty to Arkema by (a) failing to take every reasonable precaution to minimize any hazard while performing Services under the Transloading Agreement, (b) failing to notify its employees of all hazards associated with materials handled under the Transloading Agreement and protect its employees from any hazards, and (c) failing to provide to all employees and contractors working in or around the Facility sufficient training for the employees and contractors to carry out their duties in a safe and responsible manner.

76. Arkema was damaged by this breach.

**WHEREFORE,** Arkema demands judgment against Bulk to:

(a) award Arkema damages to be proven at trial;

(b) award Arkema its attorneys' fees and costs and interest; and

(c) grant Arkema all other relief as the Court deems just and proper.

## COUNT VI
### Breach of Transloading Agreement § 4.4

77. Arkema realleges and incorporates by reference the allegations contained in Paragraph numbers 1 through 36 above as if fully set forth here.

78. On May 1, 2010, Arkema and Bulk entered into the Transloading Agreement attached as **Exhibit A**.

79. Arkema has substantially satisfied all of its material obligations under the Transloading Agreement and has not waived or abandoned its rights.

80. Transloading Agreement § 4.4 required Bulk to "render all services [under the Transloading Agreement] in compliance with . . . the Occupational Safety and Health Act."

81. Bulk breached its duty to Arkema by failing to render all Services under the Transloading Agreement in compliance with the Occupational Safety and Health Act for the reasons described in the OSHA Citation.

82. Arkema was damaged by this breach.

**WHEREFORE,** Arkema demands judgment against Bulk to:

(a) award Arkema damages to be proven at trial;

(b) award Arkema its attorneys' fees and costs and interest; and

(c) grant Arkema all other relief as the Court deems just and proper.

### COUNT VII
### Breach of Transloading Agreement § 4.6

83. Arkema realleges and incorporates by reference the allegations contained in Paragraph numbers 1 through 36 above as if fully set forth here.

84. On May 1, 2010, Arkema and Bulk entered into the Transloading Agreement attached as **Exhibit A**.

85. Arkema has substantially satisfied all of its material obligations under the Transloading Agreement and has not waived or abandoned its rights.

86. Transloading Agreement § 4.6 required Bulk to "acknowledge[] that it is solely responsible for and in control of operations at its Facility as well as the railcars and trucks utilized for the transport of the Materials."
19

Case 8:17-cv-00057-RAL-AEP   Document 1   Filed 01/09/17   Page 20 of 20 PageID 20

87. Bulk breached its duty to Arkema by failing to "acknowledge[] that it is solely responsible for and in control of operations at its Facility as well as the railcars and trucks utilized for the transport of the Materials."

88. Arkema was damaged by this breach.

**WHEREFORE,** Arkema demands judgment against Bulk to:

(a) award Arkema damages to be proven at trial;

(b) award Arkema its attorneys' fees and costs and interest; and

(c) grant Arkema all other relief as the Court deems just and proper.

Arkema reserves its rights to bring any future actions, including those for contractual and common law indemnification.

Arkema demands a trial on all triable issues.

January 9, 2017

Respectfully submitted,

/s/ Christopher Torres
Christopher Torres (FBN 0716731)
Email: torresch@gtlaw.com
Ryan T. Hopper (FBN 0107347)
Email: hopperr@gtlaw.com
**GREENBERG TRAURIG, P.A.**
101 E. Kennedy Boulevard, Suite 1900
Tampa, Florida 33602
Telephone: (813) 318-5700
Facsimile: (813) 318-5900

*Attorneys for Plaintiff, Arkema Inc.*

TPA 512270959